NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC. D/B/A INTEGRATED SPORTS MEDIA,<br><br>*Plaintiff*,<br><br>v.<br><br>STANLEY WNEK and GUSTAVO A. PALACIOS, individually, and as officers, directors, shareholders, principals, managers and/or members of ESPINDOLA-HERNANDEZ, LLC d/b/a KANELAS LOUNGE, and ESPINDOLA-HERNANDEZ, LLC d/b/a KANELAS LOUNGE,<br><br>*Defendants*. | Civil Action No. 24-5659<br><br>**OPINION**<br><br>June 3, 2025 |

**SEMPER**, District Judge.

The current matter comes before the court on Innovative Sports Management, Inc. d/b/a Integrated Sports Media's ("Plaintiff") motion for default judgment against Stanley Wnek, Gustavo A. Palacios, and Espindola-Hernandez, LLC d/b/a "Kanelas Lounge" (collectively "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). (ECF 9, "Pl. Mot.") The Court has decided this motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Plaintiff's motion is **GRANTED**.

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This matter arises under 47 U.S.C. § 605 and 47 U.S.C. § 553 for the unlawful interception and exhibition of a television broadcast of the Colombia v. Iraq soccer match that took place on June 16, 2023 (the "Match"). (ECF 1, "Compl." ¶ 6.) Plaintiff is a New Jersey Corporation with its principal place of business located in Tenafly, New Jersey. (*Id*. ¶ 5.) Plaintiff is the exclusive commercial distributor of International Friendly Matches within the United States. (*Id*. ¶ 6.) Plaintiff enters into licensing agreements with other New Jersey businesses, which grants them the rights to exhibit matches lawfully and commercially to their patrons. (*Id*. ¶ 18.) Plaintiff was the exclusive commercial distributor of the Match. (*Id*. ¶ 6.)

Defendant Espindola-Hernandez d/b/a Kanelas Lounge is a limited liability company located at 265 North Broad Street in Elizabeth, New Jersey. (*Id*. ¶¶ 9, 13.) Kanelas Lounge has an estimated capacity of over 200 patrons. (ECF 9-2, "Pl. Aff." ¶ 11; ECF 9-5, Site Inspection, "Ex. C".) Defendants Stanley Wnek and Gustavo Palacios supervise and operate Kanelas Lounge. (Compl. ¶ 10.) They are also the managing members of the LCC. (*Id*. ¶ 9; 1-1, "Compl. Ex. A".) Defendant Wnek and Defendant Palacios each reside in Springfield and Elizabeth New Jersey, respectively. (*Id*. ¶¶ 7-8.)

On June 16, 2023, auditors hired by Plaintiff canvassed various locations in New Jersey to assess whether any establishments were publicly displaying the Match without authorization or payment to Plaintiff. (Pl. Aff. ¶ 7.) During the Match's live exhibition window, an auditor entered

---

[1] As a consequence of the Clerk of Court's entry of default against Defendants on August 15, 2024, and for purposes of deciding the instant motion for default judgment, the Court accepts as true the factual allegations in Plaintiff's Complaint, save those relating to the amount of damages. *See United States v. Pinsky*, No. 10–2280, 2011 WL 1326031, at *2 (D.N.J. Mar. 31, 2011) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

2

Kanelas Lounge and observed five television screens displaying the Match.[2] (Compl. ¶ 21; Pl. Aff. ¶¶ 9-11; Ex. C.) The auditor made a video recording and took photographs which depict Defendants' exhibition of the Match. (Pl. Aff. ¶ 11; ECF 9-6, "Ex. D".) Kanelas Lounge was not on the list of authorized locations that obtained a license and paid the required fee to exhibit the Match. (Pl. Aff. ¶ 5; ECF 9-4, "Ex. B".) Plaintiff alleges that Defendants derived a commercial benefit from the unauthorized exhibition of the Match. (Compl. ¶¶ 11, 15.)

Plaintiff filed the instant lawsuit against Defendants on April 26, 2024, seeking statutory penalties and enhanced damages related to Defendants' willful violation of 47 U.S.C § 605 or 47 U.S.C § 553, and an award of attorney's fees. (*Id*. ¶¶ 16-37.) Plaintiff timely served Defendants with the Complaint. (ECF 4-6.) Defendants failed to answer or otherwise defend against the Complaint. On August 13, 2024, Plaintiff petitioned the Clerk of the Court for an entry of default

---

[2] Plaintiff does not allege the precise manner in which Defendants intercepted the broadcast signal. On the one hand, they could have acquired it using a satellite receiver. On the other hand, they could have intercepted the broadcast after it was converted to a cable transmission. The difference is relevant to identifying the proper cause of action under which Plaintiff may seek relief. The unauthorized receipt of radio communications, including satellite transmissions, is proscribed by 47 U.S.C. § 605, while a different statute, 47 U.S.C. § 553, prohibits such reception of communications transmitted over a wired cable system. In a case such as this one, where Defendants have failed to respond in any way to Plaintiff's Complaint and therefore are not available to engage in the discovery process, it is virtually impossible for Plaintiff to learn the specific method of interception of the broadcast signal. In such instances, courts in this district have found it proper to award statutory damages under either statute. *See, e.g., J & J Sports Prods., Inc. v. Perdomo*, No. 06–1374, 2007 WL 923522 at *2 (D.N.J. Mar. 26, 2007) (recognizing that the manner in which plaintiff's signal was intercepted "may be exclusively within Defendants' knowledge" and therefore not faulting plaintiff for failing to plead the particular manner of interception); *J & J Sports Prods., Inc. v. Edrington*, No. 10–3789, 2012 WL 525970 at *3 (D.N.J. Feb.16, 2012) (acknowledging the approach of *Perdomo* and finding plaintiff's factual allegations sufficient to award damages under either Section 553 or Section 605); *Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *1 (D.N.J. Mar. 13, 2013) (acknowledging the same approach and conducting analysis and award of damages under Section 553 or Section 605). The Court notes that the two statutes share a nearly identical remedial scheme, and that the judgment the Court will enter in this matter is appropriate in either case. Thus, the Court will conduct its analysis with reference to both Section 553 and 605.

judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(a), and the Clerk of the Court entered default against all Defendants on August 15, 2024.  (ECF 8.)  Defendants have not challenged the default, opposed this motion, or appeared in this action.  Plaintiff now moves for default judgment against Defendants.  (*See generally* Pl. Mot.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008).  Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the Defendants and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018).  Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment.  Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)).  An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008).  After a cause of action has been

established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

### III. ANALYSIS

#### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, LLC*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)). This Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants. Here, there is federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under federal statutes 47 U.S.C. § 605 and 47 U.S.C. § 553.

The Court also retains personal jurisdiction over Defendants. "[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) (internal quotation marks and citation omitted). Because Defendants Wnek and Palacios are residents of New Jersey[3], the exercise of personal jurisdiction over the individual Defendants is proper.

---

[3] Defendant Wnek resides at 23 Newbrook Lane in Springfield, New Jersey and Defendant Palacios resides at 757 Jersey Ave. in Elizabeth, New Jersey. (Compl. ¶¶ 7, 8.)

"With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted). "Courts have applied the *Daimler* rules to limited liability companies with 'equal force.'" *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018). As a result, "for the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of [formation]." *Rodriquez Rivera v. Loto Grp., LLC*, No. 20-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020) (quoting *Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 WL 3497010, at *16 (D.N.J. June 29, 2020)).

Here, Plaintiff alleges that Defendant Espindola-Hernandez, LLC's principal place of business is 265 N. Broad Street in Elizabeth, New Jersey, where Kanelas Lounge is located. (Compl. ¶ 9.) Records from the New Jersey Secretary of State reflect that the registered business address for Espindola-Hernandez, LLC is 265 N. Broad Street. (Compl. Ex. A.) Defendant Espindola-Hernandez is therefore at "home" in New Jersey, and thus this Court has personal jurisdiction over all Defendants.

### B. Service of Process

For service to be proper on an individual, Rule 4 requires service to be effectuated by a nonparty "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e)(2)(A). As a limited liability company, a defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Plaintiff provides the Court with executed summons for all three Defendants. (ECF 4-6.) Defendant Wnek was personally served at his place of work in New Jersey on June

6

29, 2024 (ECF 5), and Defendant Palacios was personally served at his home in New Jersey on May 9, 2024. (ECF 6.) The executed summons for service on Espindola-Hernandez, LLC indicates that personal service was made upon the LLC's authorized representative, Defendant Stanley Wnek, at Defendant Espindola-Hernandez, LLC's principal place of business. (ECF 4.) Thus, the Court is satisfied that it has jurisdiction to enter default judgment and that Defendants were properly served. *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### C. Sufficiency of Plaintiff's Causes of Action

After establishing that this Court has jurisdiction and that service was proper, the Court must determine whether the Complaint states proper causes of action against Defendants. In conducting this inquiry, the Court accepts as true a plaintiff's well pleaded factual allegations while disregarding its mere legal conclusions. *See Directv, Inc. v. Asher*, No. 03–1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). When a plaintiff seeks relief under either 47 U.S.C. § 605 or 47 U.S.C. § 553 for the unauthorized interception and broadcast of television programming, its burden is to show that the defendant "(1) intercepted a broadcast; (2) [was] not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J & J Sports Prods., Inc. v. Edrington*, No. 10–3789, 2012 WL 525970 at *2 (D.N.J. Feb.16, 2012). In addition, a plaintiff may receive enhanced damages if it can show that interception of the broadcast was willful and for commercial advantage or private gain. 47 U.S.C. § 605(e)(3)(C)(ii); 47 U.S.C. § 553(c)(3)(B).

The video captured by the auditor conducting a site inspection at Kanelas Lounge on June 16, 2023 sufficiently demonstrates that Defendants publicly displayed the Match at their

7

establishment. (*See* Pl. Aff. ¶ 11; Ex. D.) Plaintiff has presented sufficient facts to show (1) that Plaintiff had the rights to distribute the Match in the State of New Jersey (Pl. Aff. ¶ 3), and (2) that Defendants never secured a licensing agreement with Plaintiff that would permit them to display the Match. (Ex. B). Accordingly, Plaintiff has stated a prima facie case for unauthorized interception and publication of communications under either 47 U.S.C. § 553 or 47 U.S.C. § 605.

Defendants have no meritorious defense based on the limited record before the Court. *See e.g., Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond). Defendants were properly served and failed to appear, defend, or otherwise respond to the complaint. *See supra.* Plaintiff is clearly prejudiced by Defendants' failure to respond as it has been prevented from prosecuting its case and seeking relief. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant.").

Similarly, absent any evidence to the contrary, "the Defendant[s]' failure to answer evinces the Defendant[s]' culpability in default." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4. In this case, there is nothing before the Court to show that Defendants' failure to respond was not willfully negligent. *See id.* (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful

8

negligence, the defendant's conduct is culpable and default judgment is warranted). Accordingly, the Court will enter default judgment against Defendants.

### D. Damages

Under either Section 553 or Section 605, a private party "aggrieved" by the unauthorized reception of communications may be awarded statutory damages. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II). Under Section 553, these damages range from $250 to $10,000 per violation, while under section 605, they range from $1,000 to $10,000. *Id.* The Court is to choose an amount within these ranges that it "considers just" under the circumstances. *Id.* In addition, if the unauthorized reception of the communications was done "willfully and for purposes of commercial advantage or private financial gain," the Court has discretion to award so-called "enhanced damages," increasing the range to $50,000 per violation in the case of Section 553, and $100,000 per violation in the case of Section 605. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff asks the Court to award the maximum statutory damages available under Section 605. (Pl. Mot. at 9.) The licensing fee Defendants would have needed to pay Plaintiff to obtain the rights to exhibit the Match at an establishment that could accommodate over 200 patrons is $1,750. (ECF 9-3, "Ex. A".) The Court in its discretion under 47 U.S.C. § 605(c)(3)(C)(i)(II) will award the statutory maximum amount of $10,000. *See DirecTV, Inc. v. Gendrachi*, No. 03-1970, 2005 WL 350952, at *4 (D.N.J. Feb. 14, 2005) (finding defendant in default and awarding statutory maximum amount of $10,000 under Section 605).

Plaintiff also seeks enhanced statutory damages of up to $10,000 under Section 605. (*Id.*) Plaintiff alleges that Defendants' exhibition of the Match was committed willfully and for commercial advantage. (*Id.* at 7-8.) The Court agrees with Plaintiff that it would be virtually

9

impossible to receive this encrypted broadcast inadvertently; rather, "the interception must have involved actions taken with the intent to receive the Broadcast through illicit means." *Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. Mar. 13, 2013). Further, because Defendants displayed the Match at their place of business, the Court may infer that Defendants' conduct was "for purposes of direct or indirect commercial advantage or private financial gain[,]" rather than for enjoyment by private parties at home. 47 U.S.C. § 605(c)(3)(C)(ii). Thus, the Court will award Plaintiff an additional $10,000 in enhanced damages "to deter future violations by these and similarly situated parties." *Joe Hand Promotions*, 2013 WL 1007398, at *3 (awarding enhanced damages under Section 553 and Section 605).

Finally, Section 605 directs the Court to award reasonable attorneys' fees to the aggrieved party who prevails.[4] *See* 47 U.S.C. § 605(e)(3)(B)(iii) ("The court…shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.") Plaintiff is directed to submit an affidavit detailing the costs and attorneys' fees incurred in the prosecution of this action. If the Court is satisfied that these costs and fees are reasonable, it will award Plaintiff the full amount requested.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment (ECF 9) is **GRANTED**. Accordingly, it will enter judgment against Defendants jointly and severally in the amount of $20,000, representing $10,000 in statutory damages and $10,000 in enhanced damages. Plaintiff is directed to submit an affidavit detailing the costs and attorneys' fees incurred in this action. The Court will then issue an appropriate order.

---

[4] While Plaintiff asks for the recovery of reasonable attorneys' fees and costs in the Complaint (Compl. ¶ 35), Plaintiff makes no mention of costs or attorneys' fees in its present motion for default judgment.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:     Jose R. Almonte, U.S.M.J.
        Parties